UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SYLVESTER OKPALA,

        Plaintiff,

        v.

DISTRICT OF COLUMBIA,

        Defendant.

Civil Action No. 9-cv-1948 (RLW)

## **MEMORANDUM OPINION**

Presently before the Court is "Plaintiff's Second Motion for Leave of Court to Amend Complaint to Add Additional Basis for Relief." [1] (Doc. 23.) For the reasons set forth below, Plaintiff's motion is hereby GRANTED.

In the present action Plaintiff alleges unlawful termination and retaliation, on the basis of race and national origin, by his former employer the District of Columbia Department of Transportation (DCDOT). In the original complaint, Plaintiff asserted claims pursuant to Title VII. (Doc. 1.) In the proposed amended complaint, Plaintiff seeks to add a Fifth Amendment claim styled "Deprivation of Protected Liberty Interest Without Due Process of Law Based on Defamatory Statements." (*See* Doc. 23-1.)

## **FACTS**

The facts that gave rise to Plaintiff's lawsuit began with an investigation by the DCDOT Office of Inspector General, over alleged corruption by Plaintiff involving government contracts. Ultimately, the Inspector General's office was unable to substantiate the allegations. Several months later, Plaintiff, who is a Nigerian civil engineer, testified on behalf of a co-worker

---

1 Although styled as Plaintiff's "second" motion to amend, the Plaintiff has not yet amended his original complaint filed on October 15, 2009.

involved in an EEO investigation. According to Plaintiff, shortly thereafter, Al Shakeri (an Iranian supervisor) began retaliating against Plaintiff for assisting the co-worker. Specifically, Shakeri verbally accused Plaintiff of corruption, taking kickbacks, and involvement in criminal activity. (Doc. 23-1 ¶ 24.) Shakeri's pursuit of these charges ultimately culminated in an investigation by the DCDOT's Office of Integrity and Workforce Relations, which issued a report that was "circulated within management." (*Id*. ¶¶ 1, 12-13.) According to Plaintiff, this July 2, 2008, report accused Plaintiff of corruption, taking kickbacks and engaging in criminal activities for personal gain. (*Id*. ¶¶ 1,14.) On the same day of the report, Plaintiff received a "for Cause" termination letter. (*Id*. ¶ 14.) Prior to receiving the letter, he was unaware of the second investigation and he was never afforded an opportunity to rebut any of the allegations. (*Id*. ¶ 13.) After Plaintiff's termination, Shakeri replaced Plaintiff with an Iranian born employee whom Shakeri had repeatedly favored. (*Id*. ¶¶ 9, 15.)

According to Plaintiff, the defamatory allegations "imposed a highly injurious stigma on [his] reputation within his workplace community, which led to his summary removal." (*Id*. ¶ 24.) Furthermore, DCDOT's "conduct" prevented Plaintiff from finding comparable employment for more than a year and "interfered with his ability to obtain government contracts" with the District of Columbia. (*Id.* ¶¶ 18, 27.)

## MOTIONS TO DISMISS

Although the deadline for amending the pleadings has passed, (s*ee* Minute Order entered 6/3/2010), Plaintiff may amend his complaint with consent of the DCDOT. In the absence of such consent, the Federal Rules of Civil Procedure provide that Plaintiff may amend his complaint with leave of court and leave should be "freely" given "when justice so requires."

Fed. R. Civ. P 15(a)(2). Specifically, leave to amend is appropriate "[i]n the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Atchinson v. District of Columbia*, 73 F.3d 418, 425-26 (D.C. Cir. 1996) (citations omitted). In the instant case, Defendant raises no issues of undue delay or untoward conduct, rather Defendant argues that Plaintiff's proposed addition of the Fifth Amendment due process claim would be futile.

This Court "may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). When analyzing a motion to dismiss, this Court must view the facts in the light most favorable to Plaintiff and dismiss the proposed Fifth Amendment claim only if Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Doe v. DOJ*, 753 F.2d 1092, 1102 (D.C. Cir. 1985) (citation omitted).

**ANALYSIS**

Defendant raises two arguments to support its contention that Plaintiff's Fifth Amendment claim is futile. First, Defendant argues Plaintiff cannot establish that the charges against him were false. According to Defendant, Plaintiff admittedly failed to list his wholly owned corporation on a disclosure form, which requires District of Columbia employees to disclose any connections with entities that conduct business with the city. Thus, whether or not Plaintiff failed to do so purposefully or inadvertently, the charges supporting his termination were true, asserts DCDOT.

Inasmuch as this Court must, at this juncture, consider the facts in the light most favorable to Plaintiff, Defendant's first argument is unpersuasive. Even if Plaintiff did fail to disclose his business interests, such a failure does not necessarily amount to corruption and criminal activity. Because this Court must assume that DCDOT did in fact make the alleged defamatory statements regarding corruption and criminal activity, Plaintiff's failure to disclose his business interests does not automatically foreclose his liberty interest due process claim.

When pursuing such a claim, Plaintiff may proceed under one of two theories: (1) a reputation-plus" theory; or (2) a "stigma or disability" theory. *O'Donnell v. Barry*, 148 F.3d 1126, 1139-40 (D.C. Cir. 1998). Under the reputation-plus theory, Plaintiff must show an adverse employment action accompanied by "official defamation." *Id*. 1140.

Under the "stigma or disability" theory, Plaintiff must show an adverse employment action accompanied by "a stigma or other disability that foreclosed the plaintiff's freedom to take advantage of other employment opportunities." *O'Donnell*, 148 F.3d 1126, 1140 (D.C. Cir. 1998) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972)). Unlike the "reputation-plus" theory, the "stigma or disability" theory "does not depend on official <u>speech</u>, but on" some "official <u>action</u>" that leads to a "continuing stigma or disability." *O'Donnell*, 148 F.3d at 1140 (emphasis added); *see e.g., Kartseva v. Department of State*, 37 F.3d 1524, 1527 - 30 (D.C. Cir. 1994) (reversing dismissal of liberty interest claim where the State Department withheld a security clearance from Plaintiff, who was a translator, thereby leading to her termination from employment with a State Department contractor). A Plaintiff can establish this "stigma or disability" by showing:

    (1)    that the government action "formally or automatically excluded [Plaintiff] from work or some category of future State contracts or from other government

employment opportunities";

or

(2) that the government action has the "broad effect of largely precluding [Plaintiff] from pursing h[is] chosen career . . . ."

*O'Donnell*, 148 F.3d at 1140 – 41.

Defendant argues Plaintiff's proposed claim is futile under both the "reputation-plus" and the "stigma or disability" theory because Plaintiff "does not allege, nor could he," that any part of the report, Shakeri's statements, or the termination letter were published outside to the DCDOT. (*See* Def's Br. at 4.) Rather than addressing the specific point raised by Defendant, the Plaintiff merely responds that the charges were "published" because they appeared in the report and in his termination letter. (Doc. 25, Pl.'s Reply at 2.)

This failure to address Defendant's specific argument, about disclosure outside of the agency, is not fatal to Plaintiff's claim because such disclosure is not required under Circuit precedent. Indeed, in *Old Dominion Diary Products, Inc. v. Secretary of Defense*, 631 F.2d 953, 963-64 (D.C. Cir. 1980), the Court of Appeals held that a contractor had a viable liberty interest due process claim after a governmental agency's findings of misconduct prevented the contractor from securing further contracts with the same agency. The Court also noted that the misconduct findings would likely have prevented the contractor from obtaining any government contracts.

Like the Plaintiff in *Old Dominion*, the Plaintiff here alleges that the Defendant's defamatory conduct "interfered with his ability to obtain contracts with Defendant." (Doc. 23-1 ¶ 27.) While it is unclear whether or not Plaintiff alleges that the charges were released to persons outside the DCDOT, the precedent established in *Old Dominion* makes this distinction irrelevant at the motion to dismiss stage: *Old Dominion* involved a Plaintiff's challenge to

defamatory findings by the State Department and that same department's failure to award Plaintiff additional contracts. *See* 631 F.2d at 956-59.

Notably, Defendant does not cite *Old Dominion* in its brief. Rather, Defendant relies on four other cases in support of its argument that Plaintiff must allege the challenged defamatory statements were publicly disclosed outside the governmental agency. *See Orange v. District of Columbia*, 59 F.3d 1267, 1274 (D.C. Cir. 1995), *O'Donnell*, 148 F.3d at 1140; *Doe v. Cheney*, 885 F.2d 898, 910 (D.C. Cir. 1989); *Mosrie v. Barry*, 718 F.2d 1151, 1157 (D.C. Cir. 1983). Although the cited cases did involve allegations that the defamatory statements were published outside of the Plaintiff's agency, none of the cited cases actually stands for the proposition that a liberty interest claim based on defamation is actionable solely when outside publication occurs. *See Orange*, 59 F.3d at 1274 - 75 (noting an absence of stigma where former University employees challenged a report, charging them with publicly disclosing confidential information and other misconduct, but the report was solely disseminated to the incoming college president, not the trustees, and the employees failed to establish that the report foreclosed their opportunities for future government employment.); *O'Donnell*, 148 F.3d at 1274 (declining to find a liberty interest claim where police officer complained about defamatory public statements, but there was no evidence that the public statements accompanied the adverse employment action.); *Cheney*, 885 F.2d at 909 – 10 (finding no liberty interest claim where Plaintiff's federal agency revoked his security clearance and, with Plaintiff's consent, disclosed the revocation to other government agencies in an effort to secure him another position); *Mosrie*, 718 F.3d at 1157 (explaining that Plaintiff who challenged a report and statements released to the media, must establish "public stigma" in order to proceed with a liberty interest claim).

In the absence of a requirement that publication of allegedly defamatory statements outside the agency is necessary to support a liberty interest due process claim, Plaintiff's motion will be granted. A separate order will follow.

SO ORDERED

April 6, 2011

/s/
_____
Robert L. Wilkins
United States District Judge